IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff/Respondent, vs. ANTHONY MARCOS CHADWELL, Defendant/Movant. | Cause No. CR 13-14-BLG-DWM<br>CV 16-07-BLG-DWM<br><br>ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |

**FILED**
DEC 21 2016
Clerk, U.S. District Court
District Of Montana
Missoula

This case comes before the Court on Defendant/Movant Anthony Chadwell's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Chadwell is a federal prisoner proceeding pro se.

On May 20, 2016, the United States was ordered to file certain documents relevant to Chadwell's claims, and Chadwell was given an opportunity to respond. *See* Order (Doc. 97) at 1-2. The United States complied on May 25, 2016. Chadwell did not respond.

On October 24, 2016, the United States was ordered to file any and all plea offers it made to Chadwell. Defense counsel was ordered to file all of his correspondence with Chadwell and with the United States prior to trial. Defense counsel's correspondence was to be filed *ex* parte but provided to Chadwell. The United States and defense counsel complied. Chadwell, though given an

1

opportunity to respond, again did not do so.

## I. Preliminary Review

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Chadwell's Claims and Analysis

Following a jury trial, Chadwell was convicted of one count of possessing a firearm while under a court order prohibiting such possession, a violation of 18 U.S.C. § 922(g)(8).

Chadwell contends that counsel was ineffective because he failed to move to suppress the fruits of a traffic stop, failed to subpoena a material witness (the

2

passenger, Brandon Robinson), failed to object to the criminal history calculation and a sentence enhancement that was not proved to a jury beyond reasonable doubt, and failed to argue that Chadwell was not fairly advised he could not possess a firearm. He also contends that appellate counsel was ineffective because she did not raise any of these claims. Finally, in one paragraph of a supporting affidavit, Chadwell avers that he rejected a plea offer and went to trial because counsel promised he would be sentenced to only 27 months if convicted at trial.

Claims of ineffective assistance of trial or appellate counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984); *Smith v. Robbins*, 528 U.S. 259, 285 (2000). At this stage of the proceeding, Chadwell must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Chadwell's claims are reorganized here, but all are addressed.

### A. Advice re: Firearm Prohibition

Chadwell contends that he was not adequately advised of the federal legal consequences of his subjection to an order of protection issued by a municipal

3

court. Mot. § 2255 (Doc. 93) at 5; Br. in Supp. (Doc. 96) at 4; Chadwell Aff. (Doc. 96-1) at 2.

The protective order indicated on its face that Chadwell met "Federal Firearm Disqualification Criteria." *See* Order of Protection (Doc. 98-1) at 1 (showing every box checked). This information alone was adequate to put Chadwell on notice, at the least, that he should find out whether federal law disqualified him from possessing a firearm and what "possession" meant. *Cf. Lambert v. California*, 355 U.S. 225, 229 (1957) (stating that "circumstances which might move one to inquire" may demonstrate that a defendant had adequate notice of prohibited or required conduct); *see also* Order of Protection at 3 (stating "Respondent shall not possess firearms"); *id.* at 4 (stating that Respondent was present at a hearing extending the temporary order of protection and providing warning that violation of the order "may be a criminal offense under applicable Federal or Tribal law and is a criminal offense" under state law); *id.* at 5 (certifying that Respondent was served with the order).

There is no reasonable probability that the outcome of the proceedings would have been different if Chadwell had claimed lack of notice. At the least, the second prong of the *Strickland* test is not met. This claim is denied.

**B. Motion to Suppress**

The conditions of Chadwell's probation, dated May 7, 2012, included a

4

provision stating that "my person, vehicle, and/or residence may be searched at any time, day or night, without a warrant by a Probation Officer or Law Enforcement Officer (at the discretion of the Probation Officer)." Conditions (Doc. 98-2) at 1. The written judgment, *see* Written Judgment (Doc. 98-2) at 6 ¶ 4, confined searches to those supported by reasonable suspicion. As there was at least reasonable suspicion to support each step of the officers' proceedings, the discrepancy makes no difference.

Initially, the traffic stop of August 26, 2012, was made because an officer spotted and followed a vehicle he believed to be associated with a person who had an outstanding arrest warrant. When he stopped the vehicle and talked to the driver and passenger, he immediately knew the wanted person was not in the vehicle. He also immediately knew that Chadwell, the driver, was a habitual traffic offender who was not supposed to be driving. At that point, he had probable cause to arrest Chadwell, and he did so. Chadwell stepped out of the vehicle, closing the door right behind him. The officer asked Chadwell whether he would find anything in the vehicle. Chadwell responded by yelling at the passenger, Brandon Robinson, to get out of the vehicle. Robinson not only got out but also locked the doors and sat on the trunk. The officer asked Chadwell whether the vehicle was insured. Chadwell said it was. The officer asked whether proof of insurance was in the glove box. Chadwell told him, "No, you're not getting in

5

there. So just give me a no-insurance."

Under these circumstances, any competent officer could have, and probably would have, reasonable suspicions about Chadwell's and Robinson's peculiar behavior. After Chadwell was transported away from the scene, the officer duly contacted Chadwell's probation officer, who authorized a search of the vehicle pursuant to Chadwell's conditions of probation. *See* Conditions (Doc. 98-2 at 1) ("Search"); Judgment (Doc. 98-2 at 6) ("Searches"). In the search, officers discovered a loaded .25-caliber semiautomatic pistol with a round in the chamber between the front seats and an unloaded .22-caliber semiautomatic pistol in the glove box. Also, on the driver's side floorboard, officers found a bottle containing two sandwich baggies, each of which contained cocaine.

Chadwell now contends, *see* Mot. § 2255 at ; Br. in Supp. at 7-11; Chadwell Aff. at 3, that this scenario presented a host of Fourth Amendment violations. It didn't. It is not relevant that the officers who conducted the search were state officers or that the evidence might not have been admissible in state court (a point the Court has no reason to doubt but need not decide). Even if a search or arrest is unlawful under state law, it can still be lawful under federal law. *See, e.g., Virginia v. Moore*, 553 U.S. 164, 176 (2008).

Here, there was no Fourth Amendment violation at any step of the officers' proceedings. The officer's suspicion that Lawson would be in the vehicle was

mistaken but not unreasonable, so the traffic stop was supported by reasonable suspicion. When Chadwell, from the driver's seat, spontaneously confessed it was a crime for him to be driving, the officer had probable cause to arrest him. When Chadwell, on emerging from the vehicle, behaved suspiciously with respect to the contents of the vehicle, the officer reasonably suspected the vehicle would contain evidence or contraband. And because Chadwell was a probationer who clearly did not want the officer to search the vehicle, he cannot reasonably contest the probation officer's authorization to search the vehicle.

Chadwell claims the officer had no grounds for complaint against the vehicle or its true owner. Legitimate law enforcement interests would obviously be unreasonably thwarted if persons engaged in criminal activity could prevent search of a vehicle just by driving a car that belongs to someone else. As the Supreme Court said in *Katz v. United States*, 389 U.S. 347, 351 (1967), "the Fourth Amendment protects people, not places." Consequently, to the extent Chadwell's disavowals mean that he had no possessory interest in the vehicle, the legal consequence is not the vehicle's immunity from search. It is Chadwell's loss of any standing to object to the search. Thus, regardless of who owned the vehicle, the evidence obtained in the search was admissible against Chadwell.

At every step, the stop and search of the vehicle Chadwell was driving was reasonable under the standards of the Fourth Amendment. *See United States v.*

*Knights*, 534 U.S. 112, 121-22 (2001). There is no reason to suppose counsel's failure to file a motion to suppress was incompetent, and there is no reasonable probability a motion to suppress would have been granted. Neither prong of the *Strickland* test is met. This claim is denied.

### C. Prediction of 27-Month Sentence

In an affidavit in support of his § 2255 motion, Chadwell contends:

> I went to trial and refused the Government's plea offer, only because counsel informed me that the maximum sentence, that I would rec[ei]ve, under the Guidelines, if I lost the trial, was 27 months.

Chadwell Aff. (Doc. 96-1) at 2. Chadwell does not mention this allegation in any way in his § 2255 motion or in the brief he filed in its support. But the Court will assume he meant to allege in his motion that he would have pled guilty if he had known the sentence following a conviction at trial could be more than 27 months.

First, Chadwell's statement that he "refused the Government's plea offer" is contradicted by documentary evidence—or, rather, its absence. The United States reports that it "extended neither a written nor an oral plea agreement offer to Chadwell or his counsel during the pendency of his case." United States Resp. to Order (Doc. 100) at 1-2. Chadwell's statement is also contradicted by defense counsel's file, which shows no correspondence with the United States and no correspondence with Chadwell relating to a plea offer. *See* Def. Counsel Resp. to Order (Doc. 103), *passim*.

8

Second, defense counsel provided a memo to the file indicating that Chadwell was told he likely faced a guideline range of 21 to 27 months if convicted at trial. While this proved to be incorrect, and Chadwell instead faced a guideline range of 41 to 51 months, relief is not warranted. Only a "gross mischaracterization of the likely outcome" at sentencing, "combined with . . . erroneous advice on the possible effects of going to trial," may support a finding that a guilty plea was involuntary. *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986). Counsel's estimate was not a "gross mischaracterization," as the statutory maximum was ten years and Chadwell was sentenced to serve 48 months in prison rather than the 27 months he claims he expected. Nothing Chadwell now alleges and nothing in the record of the case suggests Chadwell received erroneous advice about the strong likelihood of conviction at trial.

Finally, Chadwell knew the statutory maximum was ten years. *See, e.g.*, Minutes (Doc. 4); Indictment (Doc. 1) at 1. He does not claim he would have pled guilty if he had known his sentence would be longer than 27 months with or without a guilty plea, as was the case. In fact, from the scene of the traffic stop, to trial, and through sentencing, the attitude the Court observed remained consistent. Chadwell was highly unlikely to choose a guilty plea. *See, e.g.*, Sentencing Tr. (Doc. 87) at 47:23-49:4, 49:19-50:22 ("It's like there's some technicality here that you think must be met before you're willing to acknowledge the wrongdoing.").

This claim is denied.

**D. Chadwell's Possession of Firearm**

Chadwell contends that counsel should have subpoenaed Robinson to testify that he owned both firearms and they did not belong to Chadwell. Mot. § 2255 at 5; Br. at 6-7; Chadwell Aff. at 1-2. This argument is another version of Chadwell's argument that the vehicle could not be searched because it did not belong to him. As to both the vehicle and the firearm, legal ownership is not the point.

Chadwell was prohibited from "possessing" any firearm. "A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it." 9th Cir. Jury Instr. (Crim.) No. 3.17 (2010).

The central question for the jury at trial was whether the evidence proved, beyond reasonable doubt, that Chadwell knew of and had physical control over the firearms found in the vehicle. Any reasonable juror could have found each element of the offense was proved beyond reasonable doubt. *See* Jury Instruction Nos. 10, 11, 13 (Doc. 53 at 10, 11, 13-14). *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The evidence was sufficient to support the verdict. Neither prong of the *Strickland* test is met. This claim is denied.

### E. Enhancement under U.S.S.G. § 2K2.1(b)(6)(B)

Chadwell contends that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny prohibited a four-level enhancement in his advisory guideline calculation under 2K2.1(b)(6)(B). *See* Mot. § 2255 at 6; Br. in Supp. at 11-13.

*Apprendi* and its progeny require any fact that increases the authorized punishment to be alleged in the charging document and proved to a jury beyond reasonable doubt. *See Apprendi*, 530 U.S. at 490. Because the sentencing guidelines are advisory and not mandatory, *Apprendi* and its progeny do not require that every fact of significance to the guideline calculation be proved to a jury beyond reasonable doubt. *See United States v. Booker*, 543 U.S. 220, 245-68 (2005).

The punishment authorized for violation of 18 U.S.C. § 922(g)(8) was no more than ten years in prison. *See* 18 U.S.C. § 924(a)(2). With or without the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), Chadwell's punishment was properly authorized because it was no more than ten years in prison. Neither prong of the *Strickland* test is met. This claim is denied.

### F. Criminal History Calculation

Chadwell contends that his misdemeanor conviction for partner or family members assault ("PFMA") should not have counted in his criminal history because he served only two weeks in jail. Mot. § 2255 at 8; Br. in Supp. at 4;

Chadwell Aff. at 3; Presentence Report ¶ 47.

A first or second conviction for PFMA is punishable by up to one year in prison. *See* Mont. Code Ann. § 45-5-206 (3)(a). For any conviction that does not receive either three points or two points, the guidelines require one point to be assessed, up to a total of four points, if the sentence imposed for the conviction included any unsuspended time in jail or prison. *See* U.S.S.G. §§ 4A1.1(c), 4A1.2(b)(1)-(2). Chadwell was convicted of PFMA on April 26, 2012, and was sentenced to 180 days in jail with 179 days suspended. One criminal history point was correctly assessed. Neither prong of the *Strickland* test is met. This claim is denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Chadwell's claims of ineffective assistance of counsel meets the required threshold. At the least, the words of the protective order issued against him should have "moved him to inquire," *see Lambert v. California*, 355 U.S. 225, 229 (1957), whether federal law disqualified him from possessing a firearm as well as what "possession" meant. At every step of the traffic stop that resulted in Chadwell's arrest, reasonable suspicion or probable cause justified the officer's actions. Counsel underestimated the likely advisory guideline range, but his forecast of 27 months was not a "gross mischaracterization" of the 48-month sentence Chadwell received in view of the ten-year statutory maximum, and Chadwell does not suggest counsel erroneously advised him about his (weak) chances at trial. Even if the firearm Chadwell knew of and had physical control over was the personal property of someone else, he still possessed it. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), did not bar a four-level enhancement under the advisory guideline scheme. Chadwell served a day in jail on his misdemeanor conviction for partner or family member assault, so it properly counted against him in his criminal history calculation. Because all these claims lack merit, it was not unreasonable for counsel to fail to raise them, and there is no reasonable probability the outcome would have been different had they been raised.

Reasonable jurists would find no basis to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Chadwell's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 93, 96) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Chadwell files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 16-07-BLG-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Chadwell.

DATED this 21st day of December, 2016.

Donald W. Molloy
United States District Court